UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| TARA GREGORY WINK | CIVIL ACTION 3:11-819 |
| VERSUS | JUDGE ROBERT G. JAMES |
| METROPOLITAN LIFE INSURANCE CO. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is Plaintiff Tara Wink's ("Mrs. Wink") Motion for Summary Judgment [Doc. No. 12] and Defendant Metropolitan Life Insurance Company's ("MetLife") Motion for Summary Judgment [Doc. No. 16]. MetLife filed a Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. [Doc. No. 15]. Mrs. Wink filed a Supplemental Memorandum In Support of Plaintiff's Motion for Summary Judgment and in Reply to Defendant's Motion for Summary Judgment. [Doc. No. 18]. MetLife filed a Reply to Plaintiff's Supplemental Memorandum. [Doc. No. 19]. For the following reasons, MetLife's Motion for Summary Judgment is GRANTED, and Mrs. Wink's Motion for Summary Judgment is DENIED.

I.    BACKGROUND

This case concerns a dispute over a contract for life insurance between Mrs. Wink's late husband, AaronWink ("Mr. Wink"), and MetLife. Mr. Wink was an employee of the Ouachita Parish Police Jury. During his employment, MetLife provided Mr. Wink with life insurance through a group insurance policy ("Original Group Policy"). Under this Original Group Policy, if Mr. Wink ceased to work with the Ouachita Parish Police Jury, he could continue his insurance coverage through one of two options.

First, Mr. Wink could choose to exercise a Portability Option that would allow him to "continue [the Original Group Policy] under another group policy . . . ." [Doc. No. 16-1, p. 8].[1] The Portability Option clearly states that Mr. Wink may only continue his insurance under the Portability Option so long as "no application has been made to convert the insurance that is to be continued to an individual policy of life insurance . . . ." *Id.*  Second, the Original Group Policy also provides Mr. Wink with the option to convert ("Conversion Option") the Original Group Policy into an individual policy from MetLife.  *Id.*  The Conversion Option limits the amount of coverage under a new, individual policy to the amount of coverage Mr. Wink had under the Original Group Policy.

Mr. Wink ceased his employment with the Ouachita Parish Police Jury on August 25, 2010.  Both parties admit that on or about that time Mr. Wink elected to exercise the Portability Option under his Original Group Policy.  MetLife states that after Mr. Wink exercised his Portability Option, it issued him a certificate of group insurance ("Second Group Policy") for $125,000.  The Second Group Policy had an effective date of October 2, 2010.

On or about September 8, 2010, Mr. Wink met with MetLife agent David Smith ("Agent Smith") and signed an agreement for an individual life insurance policy ("Individual Policy") with an additional $125,000 of coverage.  In the application, Mr. Wink clearly indicates that he has an existing life insurance policy, that he is disabled, and that he is seeking to exercise his Conversion Option under the Original Group Policy to obtain an individual policy.

MetLife accepted Mr. Wink's application and sent him a letter of confirmation of the

---

[1] The parties provide a copy of the Second Group Policy [Doc. No. 15, Ex. 3], but the parties do not discuss in their memoranda the differences between the Second Group Policy issued pursuant to the Portability Option and the Original Group Policy that preceded it.

Individual Policy, which also had an effective date of October 2, 2010.  Both policies name Mrs.

Wink as the beneficiary.  Mr. Wink subsequently paid the insurance premiums on both policies

until he passed away on December 24, 2010.

After Mr. Wink's death, Mrs. Wink submitted claims under the Second Group Policy and

the Individual Policy.  MetLife paid Mrs. Wink the full value of the claim for the Second Group

Policy, but denied her claim under the Individual Policy.  MetLife returned the premiums paid

under the Individual Policy, and notified Mrs. Wink that Mr. Wink was not eligible for the

Individual Policy because he had previously exercised his Portability Option under the Original

Group Policy, which created the Second Group Policy.

Mrs. Wink filed suit in state court on April 21, 2011, and MetLife removed the case to this

Court on June 1, 2011, based on the Court's diversity jurisdiction.  Mrs. Wink seeks to recover the

full amount of the Individual Policy, valued at $125,000, plus interest, attorney fees, and any

available penalties.

## II.   LAW & ANALYSIS

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the initial

burden of informing the court of the basis for its motion by identifying portions of the record

which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d

1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would

affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

    **B.**     **Analysis**

Mrs. Wink argues in her Motion for Summary Judgment and other filings that the Court should grant relief to her because Mr. Wink had two valid contracts with MetLife for life insurance. In support, Mrs. Wink notes that the individual policy agreement Mr. Wink signed contains a clause typed in bold print that cautions, "READ THIS POLICY CAREFULLY: This policy is a legal contract between the policy owner and Metropolitan Life Insurance Company." [Doc. No. 12, p. 3]. Mrs. Wink also submits a letter from the president of MetLife to Mr. Wink confirming the Individual Policy. This is important, Mrs. Wink argues, because the agreement for the Individual Policy states that "Only the Company's President, Vice-President or Secretary may; (a) make or change any contract for insurance; (b) make a binding promise about insurance; or change or waive any term of application, receipt or policy." *Id*. Mrs. Wink also emphasizes that Mr. Wink paid the monthly premiums from the effective date of the Individual Policy on October 2, 2010, until he passed away on December 24, 2010, and that MetLife did not notify the Winks

4

of any problem with the Individual Policy until after Mr. Wink's death.

Among other documents, Mrs. Wink submits Mr. Wink's completed application for the Individual Policy, which is signed by Mr. Wink and Agent Smith; a letter from Robert Henrikson, Chairman, President, and Chief Executive Officer of MetLife, confirming MetLife's issuance of the Individual Policy to Mr. Wink; a copy of the Individual Policy; and Agent Smith's deposition. In the deposition, Agent Smith states that there were no "irregularities" with Mr. Wink's application for the Individual Policy, that no one from MetLife ever contacted him regarding problems in the application until after Mrs. Wink submitted her claim, and that he was surprised MetLife denied the claim.  [Doc. No. 18, p. 3].

MetLife argues that the Court should grant summary judgment in its favor because the terms of the Original Group Policy made Mr. Wink ineligible for the Individual Policy.  MetLife states that the Court must view the Individual Policy in light of the Original Group Policy because insurance contracts "should be construed as a whole."  [Doc. No. 15, p. 7].  MetLife also states that "The contract to be interpreted in this case is the [Original] Group Policy which provided [Mr. Wink] the opportunity to port his coverage or to convert his coverage with no evidence of insurability.  The Court cannot  . . . view the [Individual Policy] in a vacuum."  [Doc. No. 16, p. 6].

MetLife also argues that LA. REV. STAT. § 22:942 prohibits Mr. Wink from recovering under both the Second Group Policy and the Individual Policy.  This statute requires insurers to provide new, individual policies without proof of insurability to certain holders of group insurance polices when those policyholders become ineligible for their group insurance because their employment stops or they cease to be a member of the eligible class.  MetLife emphasizes §

5

22:942(10)(b), which states that this individual policy "shall be in an amount not in any event in excess of the amount of life insurance which ceases because of such termination nor less than one thousand dollars . . . ."  [Doc. No. 16-1, p. 15].  According to MetLife, this statute prevents a group policy holder from converting an original group policy into an individual policy with coverage in excess of the prior group policy.

"When sitting in diversity, a federal court will apply the choice of law rules of the forum state."  *Delta Seaboard Well Servs v. Am. Int'l Specialty Lines Ins. Co.*, 602 F.3d 340, 343 (5th Cir. 2010) (citation omitted).  The Fifth Circuit, however, has held that with regard to insurance contracts, "'[i]f the laws of the states do not conflict, then no choice-of-law analysis is necessary,'" and the law of the forum state applies.  *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002) (quoting *W.R. Grace and Co. v. Continental Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990) (other citations omitted)); *Cain v. Altec Indus., Inc.*, 236 Fed. Appx. 965, 967 (5th Cir. 2007) (per curiam) (unpublished) ("Prior to conducting a choice-of-laws analysis, we must first determine whether the laws of Louisiana and Mississippi conflict.  If the laws of the states do conflict, only then is it necessary for us to conduct a conflicts analysis to determine which state's law should apply." (citing *Schneider*, 280 F.3d at 536)).

Here, the Original Group Policy was "issued in New York to cover employees in Louisiana[,] and the policy and certificates were delivered in Louisiana to the Ouachita [Parish] Police Jury."  [Doc. No. 16-1, p. 12-13].  "Under Louisiana law, an insurance policy is a contract between the parties that must be construed in accordance with the general rules of interpretation of contracts set forth in the Louisiana Civil Code."  *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (quotation and citation omitted).  "Interpretation of a contract is the

6

determination of the common intent of the parties." LA. CIV. CODE art. 2045.  New York law governing the interpretation of insurance contracts is not substantively different.  *See Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995) ("In New York State, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." (citations omitted)); *Barabash v. Love's Travel Stops & Country Stores*, 2011 U.S. Dist. LEXIS 106778, at *13 (E.D. La. 2011) ("The law applicable to interpreting insurance contracts is substantially similar in Louisiana and New York.").  Since there is no conflict between Louisiana and New York law, Louisiana law governs this case.

The Court finds that the plain terms of the Original Group Policy prohibit Mr. Wink from exercising both the Portability Option and the Conversion Option.  Mrs. Wink includes Mr. Wink's application for the Individual Policy in her Motion for Summary Judgment.  [Doc. No. 12-2].  On page two of the application under the Policy Options section, Mr. Wink clearly indicates that he is exercising his Conversion Option under the Original Group Policy.  [Doc. No. 12-2, p. 21].  This section instructs Mr. Wink to also submit a Group Conversion Supplement.  Mr. Wink indicates on the Supplement that he was only applying for a conversion of the Original Group Policy into an individual policy, not for a new policy.  [Doc. No. 16-3, p. 2].  Each of these documents clearly demonstrates that Mr. Wink sought to exercise the Conversion Option in the Original Group Policy.  Since Mr. Wink exercised his Portability Option under the Original Group Policy, the plain terms of the Original Group Policy prohibit Mr. Wink from subsequently exercising the Conversion Option and receiving the Individual Policy.

Since the Court has ruled that the plain terms of the Original Group Policy preclude Mr. Wink from exercising both the Portability and Conversion Options, the Court need not address

7

MetLife's argument under LA. REV. STAT. § 22:942.

## III.    CONCLUSION

For the foregoing reasons, MetLife's Motion for Summary Judgment [Doc. No. 16] is

GRANTED, and Mrs. Wink's claims are DISMISSED WITH PREJUDICE.

Mrs. Wink's Motion for Summary Judgment [Doc. No. 12] is DENIED.

MONROE, LOUISIANA, this 21st day of February, 2012.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**